UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

RONALD DAVIS,                          )
                                       )
    *Plaintiff,*                        )
                                       )
v.                                     )          No. 1:07-cv-255
                                       )          *Mattice/Carter*
JANE MCGRAW, DR. MACMANUS,             )
NURSE JOHNSON, AND NURSE DANA;         )
each Party is sued only in their individual )
Capacity,                              )
                                       )
    *Defendants.*                       )

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Ronald Davis ("Plaintiff"), a *pro se* prisoner, filed a civil rights complaint pursuant to 42 U.S.C. § § 1983, 1985(3), and the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.* (Court File No. 2). Plaintiff, who has an extensive litigation history, is subject to the "3-strikes" provision in 28 U.S.C. § 1915(g), which prohibits a prisoner proceeding *in forma pauperis* from filing a civil action in this Court if he has, on three or more prior occasions, while incarcerated, brought an action or appeal that was dismissed on grounds that it was frivolous, malicious, or failed to state a claim upon which relief may be granted, unless the prisoner is in imminent danger of serious physical injury. Plaintiff claimed to be in imminent danger of serious physical injury; thus, the Court assessed the fee and required Defendants to respond.

As explained below, a review of the record, which includes the pleadings, medical treatment records, and the affidavit testimony of Jane Lovell-McGraw, reveals that Plaintiff

was not in imminent danger of serious physical injury, and that his Eighth Amendment Rights were not violated. Accordingly, for the reasons explained below, this action will be **DISMISSED**.

## I.     OTHER PENDING MOTIONS

Several motions are pending before the Court. The first is Plaintiff's motion requesting a temporary restraining order [Court Doc. 8]. Plaintiff filed a motion for a temporary restraining order after the Court directed Defendants to respond to the request for injunctive relief in his complaint. Like his request for injunctive relief in his complaint, his motion for a temporary restraining order requests that Defendants be required to administer his medication on a timely basis. Although Defendants acknowledge that staff made a mistake in not issuing Plaintiff his medications in mid-October, the problem was resolved. In addition, as stated herein, Plaintiff's complaint will be dismissed for failure to state a constitutional violation. Moreover, Plaintiff has notified the Court of his transfer to a different prison, which impacts his claims for injunctive relief [Court Doc. 54, Notice of Address Change]. Clearly, Plaintiff could derive no benefit from the granting of injunctive relief from the claimed wrongful conditions at Southeast Tennessee State Regional Correction Facility ("STSRCF"), since he is no longer incarcerated at that facility. Therefore, all issues concerning injunctive relief with respect to the conditions at STSRCF have become moot, *see Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.1996) (finding inmate's request for injunctive relief moot since he was no longer confined at the institution where alleged wrongdoing occurred), and will be **DISMISSED**. Accordingly, Plaintiff's motion for a temporary restraining order [Court Doc. 8] will be **DENIED as MOOT**.

-2-

Plaintiff's motion to strike Defendant Jane McGraw's affidavit pursuant to Federal Rule of Civil Procedure Rule 12(f) [Court Doc. 18] will be **DENIED.** However, the Court will exclude from its consideration of the Defendants' pending motion for summary judgment, those portions of the affidavit that are self-serving and which would not be admissible into evidence. Plaintiff's motion to hold Defendants' opposition to Plaintiff's motion for a temporary restraining order in abeyance so he can obtain his medical records [Court Doc. 19] will be **DENIED as MOOT** since he subsequently filed his medical records with the Court.

Plaintiff's motion to take affidavits from fellow inmate's to counter Defendants' claim that the medical staff at STSRCF is a group of well-trained professionals who take their jobs seriously [Court Doc. 53], will be **DENIED** because, as explained herein, the complaint is being dismissed and the Court will not consider the types of self-serving statements contained in the affidavit submitted by Defendants.

Plaintiff has filed a third motion to amend [Court Doc. 55] which the Court will **DENY,** since he is seeking to add employees at the institution where he presently resides as Defendants, and to add claims which arose out of conduct occurring at his new location. The instant complaint is based on a situation which arose at STSRCF, the institution where he previously resided.

Plaintiff is in state custody pursuant to his state sentence; thus, his motion for transfer to federal custody or a different Tennessee Department of Correction Facility [Court Doc. 56] will be **DENIED**. Also before the Court is Plaintiff's motion to compel production of medical files [Court Doc. 57]. The record reflects, however, that the medical

files sought have been sent to Plaintiff [Court Doc. 61]. Accordingly, Plaintiff's motion to compel production of medical files [Court Doc. 57] will be **DENIED as MOOT**.

Plaintiff has filed a motion to remove this case to the Eastern District of Tennessee, Greeneville Division [Court Doc. 59]. The Court has denied Plaintiff's motion to amend; thus, the Greeneville parties are not Defendants in this lawsuit. Accordingly, the motion for removal to a different division of the Court will be **DENIED.**

## II.    STANDARD OF REVIEW

### A.    Summary Judgment

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether

-4-

the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249; *National Satellite Sports*, 253 F.3d at 907. Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994), *cert. denied*, 516 U.S. 806 (1995); *Horsemen's Benev. & Protective Ass'n, Inc. v. Turfway Park Racing Ass'n, Inc.*, 20 F.3d 1406, 1411 (6th Cir. 1994); *see also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992) (holding courts do not have the responsibility to search the record *sua sponte* for genuine issues of material fact). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

**B.     28 U.S.C. § 1915(e)(2)**

The Court also screens the complaint pursuant to 28 U.S.C. § 1915(e)(2), which provides that the Court must dismiss a case at any time if the Court determines it is frivolous or fails to state a claim upon which relief can be granted. Under § 1915(e)(2) district courts are required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is *pro se*, or is represented by counsel, as the statute does not differentiate between various civil actions brought by

prisoners. Thus, under § 1915(e)(2), anytime the district court determines the case is frivolous or fails to state a claim upon which relief can be granted, it must dismiss the case.

## III. FACTS

Because Plaintiff's complaint (Court Doc. 2) does not contain specific facts[1], the specific facts considered by the Court here are derived from two other documents submitted by Plaintiff – *i.e.*, his declaration in response to Defendant's opposition to injunctive relief (Court Doc. 20) and his Court-Ordered Supplement (Court Doc. 49).

Upon arrival at STSRCF, Plaintiff had 7-10 days of medication in his possession. When his medication ran out on October 11 and 15, 2007, he "waited patiently to be advised on how to receive his monthly medication." (Court Doc. 20). On October 17, 2007, Plaintiff went to the medication window to notify jail personnel that he was out of his medications and was told they did not have the medications and to check back. Plaintiff was given HCTZ (high blood pressure medication) on October 18, 2007 and Motrin on October 19, 2007. Plaintiff filed an emergency grievance on October 18, 2007, a copy of which the Court has been unable to locate. On October 22, 2007, Plaintiff was called to the clinic and given medication.

---

[1] Plaintiff's complaint consists of the following general, factually unsupported allegations: Defendants conspired and intentionally failed to issue medication to Plaintiff. Medical care is based on race because there is one procedure for white inmates and one for blacks. Plaintiff ran out of medication and although, during the second week of October, he submitted the appropriate grievances, inmate requests, and correspondence, he received no response.

The Court observes that Plaintiff does not assert he registered for sick-call and notified Defendants he needed his medication re-filled or that he was experiencing medical problems because he lacked his medication. In addition, the Court has been unable to locate any of the documents which Plaintiff alleges he filed.

-6-

Plaintiff received his diabetes medication on November 19, 2007. Plaintiff visited Defendant McGraw's office on November 27, 2007, and informed her he had been without Cardura (medication) for more than six weeks and was experiencing difficulties in urinating. As of November 29, 2007, Plaintiff had received all of his medications (Court Doc. 20).

## IV. ANALYSIS

### A. 42 U.S.C. § 1983

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 155-156 (1978); *Brock v. McWherter*, 94 F.3d 242, 244 (6th Cir. 1996). Although the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts underlying the claim, the plaintiff must provide sufficient allegations to give defendants fair notice of the claims against them. *Leatherman v. Tarrant County Narcotic Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).

### 1. Medical Claim

Plaintiff alleges that he has been denied his Eighth Amendment right to be free from cruel and unusual punishment because Defendants were deliberately indifferent to his serious medical needs when they delayed refilling his prescriptions.

Defendants concede that they made a mistake in the late renewal and refilling of the prescriptions for Plaintiff's diabetes medications, which expired during the time he was transferred from one institution to another. Defendants aver their tardiness was due simply to a mistake on their part, and was not the result of any intentional act or deliberate

-7-

indifference to Plaintiff's serious medical needs. Specifically, the prescription was not renewed because the pre-printed Medication Administration Record ("MAR") that they received from the contract pharmacy did not have the information for the diabetes medication included. Therefore, Defendants were not aware that Plaintiff needed this medication until he came to the pharmacy on October 22, 2007. At that time, he was seen by the physician assistant, who assessed Plaintiff and re-wrote orders for the two diabetes medications that he had been out of for nine days.

Defendants also contend that Plaintiff failed to follow the institution's procedure for reordering and refilling his prescriptions. Certain medications, referred to as keep-on-person ("KOP") medications, are given to the inmates and they are responsible for self-administering them, and notifying medical staff when such medications need to be refilled. All of Plaintiff's medications are KOP medications.

Defendants maintain that any delay in Plaintiff receiving his medications was due to his own failure to act, and that they were not deliberately indifferent to Plaintiff's medical needs. Plaintiff's admission that "[w]hen [his] medication ran out on 10/11/07 and 10\15\07, [he] waited patiently to be advised on how to receive [his] monthly medication[,]" supports Defendants' contention in this regard. (Court Doc. 20). Thus, Defendants argue, Plaintiff failed to follow the institution's procedure (which required him to notify medical staff that he was out of medication) when he initially ran out of his medication. Furthermore, Defendants assert that once his medication was ordered, it was Plaintiff's responsibility, under STSRCF policy, to check with medical staff to determine whether it had been delivered. Thus, any delay was the result of his failure to check with medical staff. (Court Doc. 51).

-8-

a.    *Procedure for Refilling Medications*

Defendants have submitted two affidavits by Jane Lovell-McGraw, Health Administrator at STSRCF, which include an explanation of the institution's procedure for refilling medications. Plaintiff has not refuted the information contained in these affidavits.

Some of Plaintiff's medications had not been renewed prior to his transfer to STSRCF. Thus, those prescriptions expired during the time Plaintiff was being transferred from Morgan County Correctional Complex ("MCCX") to STSRCF. Since the prescription was not renewed, the pre-printed Medication Administration Record ("MAR") that STSRCF received from the contract pharmacy did not include this information. The MAR was the general source of information for the institutional pharmacy staff when receiving new inmates. Thus, the pharmacy staff was not aware that Plaintiff needed the expired medication until he notified them on October 22, 2007 (Court Doc. 51).[2]

In addition, prior to November 30, 2007, STSRCF worked under the general premise that inmates have pharmacy access, although more limited access, and the procedure for refilling prescription medications was to do so when the inmates notified staff they needed their prescription refilled, a procedure which is like that followed in the free world.

The state penal institutions are set up to give certain medications to the inmates which they are responsible for administering to themselves. These are referred to as keep-on-person ("KOP") medications. All of Plaintiff's medications are KOP. Therefore, the procedure in place at STSRCF permitted Plaintiff to keep his medications and he was

---

[2]    Upon notification of this incident, STSRCF began a new procedure for ensuring all medications are added to the new MARs. In addition, staff now check the actual doctor's prescription to ensure old orders either transfer or new orders are written in their place if it is time for them to expire (Court Doc. 51).

expected to properly take his prescribed medications.  In addition, according to STSRCF procedure, Plaintiff was supposed to notify the pharmacy when he needed to refill his prescriptions and check back with the pharmacy to pick-up his refill, just as people are required to do in the free world.[3]

   b. *Medical Proof*

Unrefuted affidavits and medical records submitted by Defendants demonstrate that Plaintiff was being treated for non-insulin dependent diabetes, hypertension ("HTN"), hepatitis C, benign prostate hypertrophy ("BPH"), and a troublesome testicular cyst.  Upon his arrival at STSRCF, he had current orders for the following medications which were prescribed by Dr. Higgs while Plaintiff was housed at Morgan County Correctional Complex ("MCCX"): HCTZ (HTN/thiazide diuretic), Verapamil (HTN/calcium ion influx inhibitor), Doxizosin (BPH/alpha blocker), Ibuprofen, and Enalapril (HTN/ACE inhibitor).  The current medications were continued upon his arrival.  Medications that Plaintiff had been on previously but were not current when he arrived at STSRCF were: Glucophage (diabetes), Glyburide (diabetes/blood-glucose-lowering), aspirin, Atenolol (HTN/beta blocker), and Maxzide (HTN) [Court Doc. 12].

Plaintiff arrived at STSRCF with a sufficient supply of his "current" medication (listed above) to last until mid-October.  Although it appears that Plaintiff arrived with sufficient Metformin (diabetes) and Glyburide (diabetes), those medications were not reordered by the MCCX physician.  Thus, these prescriptions expired during the time that Plaintiff was

---

   [3]   However, due to this incident, STSRCF has implemented a new procedure whereby the pharmacy staff now assumes the responsibility of having medication refilled and giving the inmates their refill medication.

being transferred. Since the prescription was not renewed, the pre-printed Medication Administration Record ("MAR") that Defendants received from the contract pharmacy did not include the information for the prescriptions that had expired. Defendants were not aware that Plaintiff needed other medication which was not listed on the MAR until Plaintiff came to the pharmacy on October 22, 2007 and notified them of that fact. At that time, Plaintiff was referred to the physician assistant, who assessed him and re-wrote orders for Metformine (Glucophage) and Glyburide, which are the two medications for diabetes that Plaintiff had been out of for nine days.

Therefore, under procedures in place at the time, Plaintiff should have notified the pharmacy when his medication ran out. Upon notification that Plaintiff's prescription for his diabetes medicine had expired, STSRCF reordered those prescriptions on October 24, 2007; received them on October 26, 2007, but Plaintiff did not go to the pharmacy window to pick up the prescriptions until November 19, 2007. Although Plaintiff was without his diabetes medication for over a month, Jane Lovell-McGraw avers that his diabetes was under control while he was not taking his medications and there is no credible proof in the record that he suffered any symptoms or illness from the lack of this medication or that he was exposed to a significant risk to his health. In addition, Plaintiff received medical treatment on October, 2, 4, 10, 13, 15, 16, 18, 21, and 22, 2007, and on November 2, 6, 8, 16, and 26, 2007, and there is nothing in the medical records to indicate that he experienced any serious adverse effects from not having his diabetes medication during that time [Court Docs. 12 & 25]. The record reflects that on November 15, 2007, medical personnel notified kitchen personnel he was a non-insulin dependent diabetic and would need a lunch bag on weekends and holidays [Court Doc. 25].

In sum, Plaintiff was without his high blood pressure medication from October 14, 2007 through October 17, 2007. On October 17, 2007, two of the blood pressure medications were ordered and on October 18, 2007 Plaintiff was issued 30 pills for each of the medications. On October 22, 2007, 30 pills of the third blood pressure medication were issued to Plaintiff. Plaintiff was out of two of his blood pressure medications from November 18-28, 2007, and he was out of the third blood pressure medication from November 23-29, 2007. There are no notations by the pharmacy staff indicating that Plaintiff came to the pharmacy and requested his medication. On November 29, 2007, Plaintiff was issued thirty pills for each of his three blood pressure medications. Plaintiff took his last doses of his two diabetes medications on October 13, 2007, they were ordered on October 24, 2007, received at the institution on October 26, 2007, and Plaintiff picked them up on November 19, 2007. Although the record is unclear, it appears Plaintiff took his last dose of his prostrate medication on or about October 13, 2007, and did not receive a refill until November 29, 2007.

       *c.*    *Applicable Law*

The Eighth Amendment constitutional guarantee against the infliction of cruel and unusual punishment as applied to prisoners encompasses a right to medical care for serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). The Eighth Amendment, however, prohibits mistreatment only if it is tantamount to punishment and, therefore, courts have imposed liability upon prison officials only where they are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain. . . .The conduct must be more than mere negligence; it must demonstrate deliberateness tantamount to intent to punish." *Horn v. Madison County*

-12-

*Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Negligence or medical malpractice alone cannot sustain an Eighth Amendment claim, absent a showing of deliberate indifference. *Estelle*, 429 U.S. at 105-06. To establish defendants were deliberately indifferent, an inmate must show the alleged mistreatment was objectively serious and that the defendants subjectively ignored the inmate's medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 829, 834 (1994).

In addition, exposure of an inmate to an unreasonable risk of serious damage to his future health may violate the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 35-37 (1993). "'A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eight Amendment.'" *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996) (*quoting Farmer v. Brennan*, 511 U.S. at 828). "Prison officials can be held liable for an Eighth Amendment violation when an inmate shows: (1) 'that he is incarcerated under conditions posing a substantial risk of serious harm,' and (2) that the prison official had the 'state of mind of deliberate indifference to inmate health or safety.'" *Street v. Corrections Corp. of America*, 102 F.3d at 814 (citation omitted).

To establish an Eighth Amendment claim based upon a delay in refilling prescriptions for medication, Plaintiff must show that defendants acted with deliberate indifference or recklessness that is more than mere negligence and show the detrimental effect of the delay. *Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994). To prevail on a claim regarding an alleged delay in treatment, Plaintiff must place verifying medical evidence in the record that establishes the detrimental effect of the delay. *See Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (adopting the holding that an

-13-

inmate who complains that delay in medical treatment rose to the level of a constitutional violation must present verifying medical evidence to establish the detrimental effect of the delay in medical treatment to succeed).

> *d.    Discussion*

In the instant case, Plaintiff had been diagnosed with non-insulin dependent diabetes; hypertension; hepatitis C, benign prostrate hypertrophy, and a troublesome testicular cyst.  Most, if not all, of these conditions, by definition, can be serious medical conditions.  However, the objective seriousness of a deprivation of medical care – in this case the tardiness in refilling his medications – is also measured by reference to the effect of the delay in refilling his medication.  *See Crowley v. Hedgepeth,* 109 F.3d 500, 502 (8th Cir. 1997) (inmate who complains about delay in medical treatment must present verifying medical evidence of detrimental effect of delay); *Coleman v. Rahija*, 114 F.3d 778, 784 (8th 1997).  Thus, Plaintiff is required to submit verifying medical evidence that Defendants ignored an acute or escalating situation, or that the delays adversely affected plaintiff's prognosis.

Once medical staff at STSRCF was notified that Plaintiff ran out of HCTZ & Enalapril (high blood pressure medication) on October 17, 2007, the medication was ordered, and on October 18, 2007 those medications (quantities of 30 each) were supplied to Plaintiff. Motrin was supplied on October 19, 2007; Cardizem on October 22, 2007;[4] and Glyburide

---

[4]    Plaintiff was out of Cardizem, HCTZ and Enalapril from November 23, 2007 through November 28, 2007.  However, at that time the procedure in place at STSRCF required Plaintiff to notify medical staff that his medication had to be refilled, and to check at the medical window to see if his refill had arrived.

and Glucophage on November 19, 2007, and his prostrate medication presumably on November 29, 2007.[5]

There is no credible proof before the Court which demonstrates the Defendants disregarded Plaintiff's medical needs. There is no proof that Defendants failed to take any reasonable step to obtain medication that the pharmacy apparently lacked at the time Plaintiff ran out of his medication or that any Defendant acted with a sufficiently culpable state of mind. See *Saaty v. Voinovich*, 70 F.3d 1273 (6th Cir. Nov. 20, 1995), *available in* 1995 WL 696672, at *1 (inmate denied relief because he did not show defendants failed to take any reasonable step to abate the risk or that any defendant acted with a sufficiently culpable state of mind).

Although it is undisputed that there was a delay of several days in dispensing Plaintiff's medication, the record reflects that once Plaintiff notified the pharmacy that he needed to have his medication refilled, the pharmacy refilled it and had it ready for Plaintiff to pick up within a day or two. Although Plaintiff alleges that he went to the infirmary medication window over 12 different times before he received his diabetes medication, he has failed to factually support this allegation. Plaintiff does not identify the dates he went to the infirmary window, the person with whom he spoke, or the reason for going to the window (Court File No. 20). This Court is not required to invent and conjure up unpled claims and allegations for *pro se* litigants, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), or accept as true mere legal conclusions or unwarranted factual inferences. *See*

---

[5]     Although these diabetes medications were ordered on October 24, 2007 and received on October 26, 2007, the policy at that time was for the inmates to go to the pharmacy to see if their medications were in. Plaintiff did not go to the pharmacy to inquire about his prescription until November 19, 2007.

-15-

*Murphy v. Sofamor Danek Group Inc*. (In re Sofamor Danek Group), 123 F.3d 394, 400 (6th Cir. 1997) *cert denied*, 523 U.S. 1106 (1998)(emphasis added). Consequently, Plaintiff has failed to present any substantial credible evidence that Defendants deliberately delayed the refilling of his prescriptions. He has thus failed to demonstrate that Defendants failed to take reasonable steps to refill his medication, or that any Defendant acted with a sufficiently culpable state of mind to establish a violation of his Eighth Amendment rights.

Moreover, not only has Plaintiff failed to demonstrate that Defendants deliberately failed to refill his medication, he has failed to present any verifying medical evidence to establish the detrimental effect of the delay in filling his prescriptions. In addition, there is nothing in the record to suggest that Plaintiff suffered any ill effects based on the delay in obtaining his prescriptions. The Sixth Circuit requires that "'[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of he delay in medical treatment to succeed.'" *Napier v. Madison County, Kentucky,* 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994); *Rumsey v. Martin*, 28 Fed.Appx. 500, (6th Cir. 2002), *available in* 2002 WL 169559, *1 (plaintiff did not prevail on his claim regarding an alleged delay in treatment because he failed to submit medical evidence which clearly showed his condition deteriorated because of a delay in filling his prescriptions); *Pendergraph v. Evans*, 2006 WL 2987729 (E.D. Tenn, 2006) (physician's response to deposition questions failed to establish the plaintiff suffered a detrimental effect based upon the delay in receiving medication).

-16-

Plaintiff filed a supplement (which was not made under oath) alleging that after being without his diabetes medicine for five days he experienced frustration, irritability, blurry vision, and severe shaking and dizziness. Not only did Plaintiff fail to provide any medical proof of these alleged episodes, he also failed to provide any factual proof, as he did not provide the dates or lengths of these episodes or who was present when they occurred. More importantly, his medical records do not reflect that Plaintiff complained of these symptoms or that he was suffering any major discomfort. Indeed, Plaintiff's medical records do not indicate Plaintiff experienced any substantial complications during the time he was waiting for his prescriptions to be refilled and Plaintiff has submitted no evidence indicating that this delay posed a significant risk to his health.

Plaintiff's failure to place verifying medical evidence in the record that establishes the detrimental effect of the delay in filling his prescriptions prevents him from prevailing on this claim. *Rumsey v. Martin*, 28 Fed.Appx., 500, 502 (6th Cir. 2002), *available in* 2002 WL 169559, **1 (Plaintiff did not prevail because he did not submit medical evidence which clearly showed his condition deteriorated because of a delay in filling his prescriptions). Consequently, Plaintiff's failure to place supporting medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment precludes a claim of deliberate indifference to medical needs.

In summary, a review of the complaint in a light most favorable to Plaintiff clearly reveals that the allegations made by Plaintiff are insufficient to state an Eighth Amendment claim, because he has failed to provide the requisite material facts and specificity necessary to sustain such a claim.

-17-

There simply is no evidence that Defendant's intentionally delayed or intentionally caused the delay of Plaintiff's prescriptions being refilled. Faced with Defendants' well-supported motion for summary judgment and Plaintiff's failure to come forward with any significant, probative evidence that any Defendants were deliberately indifferent to his medical needs, the Court concludes that no issue of material fact exists in this case. Plaintiff has failed to allege specific facts showing Defendants knew of his immediate need for the medication, yet intentionally delayed refilling or refused to refill the prescription.

What the record does reflect is that Plaintiff failed to follow the institution's procedure for refilling his medications and, at most, that Defendants were negligent when a mistake was made in the timing of the renewal and refilling of prescriptions of medications that expired during his transfer from one institution to the other. There is no proof that the time Plaintiff had to wait to receive his medications was due to any deliberate indifference on Defendants' part, or that it exposed him to any serious harm.

Consequently, absent a showing that Defendants acted intentionally to withhold his medication or delay the refill of his medication, there is no evidence indicating the delays were the result of deliberate indifference on the part of Defendants. Additionally, there is no verifying medical evidence in the record that establishes the detrimental effect of the delay in filling his prescriptions. Therefore, his claim does not meet the constitutional threshold to state an Eighth Amendment violation, and will be **DISMISSED**. 28 U.S.C. § 1915(e)(2).

-18-

## 2.    Americans with Disabilities Act ("ADA")

The ADA prohibits the exclusion of otherwise qualified participants from any program or benefits on account of their disability.  42 U.S.C. § 12132.  Plaintiff claims his complaint "also hinges on the premise of the American Disability Act of 1990" without providing any factual support to establish he has a disability under ADA or that he was excluded from any program or benefit on account of some disability (Court File No. 2).

Accordingly, the Court concludes the complaint fails to state a claim under the ADA and any such claim which Plaintiff seeks to assert will be **DISMISSED**.  28 U.S.C. § 1915(e)(2).

## 3.    42 U.S.C. § 1981

Plaintiff's claims brought under 42 U.S.C. § 1981 must also be dismissed because the complaint does not allege any purposeful or intentional discrimination.  "It is well-settled that § 1981 redresses only racial discrimination."  *Leon v. Federal Reserve Bank of Chicago*, 823 F.2d 928, 930 (6th Cir.), *cert. denied*, 484 U.S. 945 (1987).  Plaintiff has not provided any factual support for his claim that medical care is based on race.  Plaintiff has not properly pled any racial or other class-based, discriminatory animus.  Plaintiff does not aver that Defendants have subjected him to intentional, purposeful discrimination because of race, ancestry, or ethnic characteristics.  *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *General Building Contractors v. Pennsylvania*, 458 U.S. 375 (1982); *Runyon v. McCrary*, 427 U.S. 160, 168 (1976); *Betkerur v. Aultman Hospital Assoc.*, 78 F.3d 1079, 1095 (6th Cir. 1996); *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989); *Leonard v. City of Frankfort Elec. And Water Plant Bd.*, 752 F.2d 189, 193 (6th

-19-

Cir. 1985). Accordingly, Plaintiff's § 1981 claim will be **DISMISSED** under 28 U.S.C. § 1915(e)(2).

### 4. 42 U.S.C. § 1985(3)

Plaintiff claims his complaint also seeks to invoke 42 U.S.C. § 1985(3). In support of this allegation, Plaintiff asserts that "[a]ll the defendants herein this civil rights action have conspired as person for the purpose of depriving plaintiff equal protection clause of the law, and as two persons acting in furtherance of such a conspiracy with meeting of the minds." (Court File No. 2, p. 5).

Title 42 U.S.C. § 1985(3 ) prohibits a conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws." To prevail on a Section 1985(3) claim, the Plaintiff must demonstrate Defendants: (1) conspired together, (2) for the purpose of depriving him, either directly or indirectly, of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) committed an act in furtherance of the conspiracy; (4) which caused injury to Plaintiff or his property, or deprived him of any right or privilege of a citizen of the United States; (5) and that the conspiracy was motivated by racial or other class-based, invidiously discriminatory animus. *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir.1999) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)); *see also, Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir.1994).

Plaintiff has failed to state a claim under § 1985(3) because he has failed to demonstrate Defendants conspired to deprive him of the equal protection of the laws or of equal privileges or immunities of the laws. In addition, Plaintiff points to no evidence that

Defendants harbored any racial or other class-based invidiously discriminatory animus towards him. Accordingly, Plaintiff's § 1985(3) claim will be **DISMISSED** for failure to state a claim. 28 U.S.C. § 1915(e)(2).

## V. STIPULATION OF DISMISSAL

Plaintiff has entered into a stipulation of dismissal with respect to Defendant Dr. Macmanus [Court Doc. 60]. The Court declines to sign the stipulation of dismissal because, under 28 U.S.C. § 1915(e)(2), the Court must dismiss a case at any time if the Court determines that it is frivolous or fails to state a claim upon which relief can be granted. Accordingly, the Court's conclusion that Plaintiff has failed to state a claim for a constitutional violation in his complaint necessarily requires the dismissal of the complaint in its entirety with prejudice against *all* Defendants, including Dr. Macmanus. Thus, the stipulation [Court Doc. 60] will be **STRICKEN** from the record.

## VI. CONCLUSION

For the reasons explained above, it is hereby **ORDERED** that Plaintiff's motions for a temporary restraining order [Court Doc. 8]; to strike Jane McGraw's affidavit [Court Doc. 18]; to hold in abeyance [Court Doc. 19]; to take depositions [Court Doc. 53]; to amend [Court Doc. 55]; to transfer [Court Doc. 56]; to compel production [Court Doc. 57]; and for removal [Court Doc. 59] are **DENIED**. Defendants' motions for summary judgment for failure to state an Eighth Amendment deliberate indifference claim are **GRANTED** [Court Docs. 23 & 30]. Plaintiff's complaint [Court Doc. 2], in its entirety, is **DISMISSED** for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2). Further, it is **ORDERED** the stipulation of dismissal between Plaintiff and Defendant Dr. Cameron

MacManus [Court Doc. 60] is **MOOT** and shall be **STRICKEN** from the record, since the complaint is dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2).

      **SO ORDERED**.

      A separate judgment will enter.

_____*/s/Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE
